IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J.S.B.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:25-CV-687-BR |
| | § | |
| Commissioner, Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of a decision by the Commissioner of Social Security, who denied Plaintiff's application for disability insurance benefits under Title II[2] of the Social Security Act ("the Act"). (ECF 1). Plaintiff challenges the Commissioner's decision on one ground: that the Administrative Law Judge ("ALJ") improperly denied Plaintiff's request for the Social Security Administration ("the Agency") to obtain a consultative medical examination, resulting in a disability determination unsupported by medical opinion evidence. (ECF 10 at 1).

Though the Court finds that the ALJ improperly relied on her own lay judgment when assessing Plaintiff's residual functional capacity, Plaintiff has not shown any prejudice resulting from the decision not to obtain a consultative examination, and the Commissioner's decision is accordingly AFFIRMED.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] 42 U.S.C. §§ 401–33.

## I.     <u>PLAINTIFF'S MEDICAL CONDITION</u>

Plaintiff was born in 1975,[3] has a General Educational Development ("GED") certification, and attended some college. (ECF 9-1 at 27). Following a motor vehicle accident in March of 2016, he has suffered from consistent pain, particularly in his lower back. (*Id.* at 25). His medical records document a straightening or stiffening of the normal curvature of his spine, contributing to a degenerative condition called spondylosis. (*Id.*). Plaintiff's doctors originally delayed surgery due to Plaintiff's comparatively young age. (*Id.*).

Plaintiff's pain has caused or aggravated certain mental health problems. His anger, which he attributes to his pain, has resulted in altercations with the mother of his children, which in 2023 resulted in his being hospitalized for mental health treatment and in late 2024 resulted in his incarceration. (*Id.*). He contributes to caregiving for a chronically ill mother and for a child with autism spectrum disorder. (*Id.*).

## II.     <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed the disputed application on March 20, 2023, alleging disability beginning January 1, 2021. (ECF 9-1 at 184–87; *see also id.* at 19).[4] After initial and upon-reconsideration denials, Plaintiff sought a review of his application by an ALJ. (*Id.* at 19). ALJ Michele Lazzaro held a telephonic hearing on August 30, 2024, at which a vocational expert and Plaintiff, represented by counsel, both testified. (*Id.*; *see id.* at 44–76 (transcript)). As further explained below, the ALJ found that Plaintiff was not disabled during the period covered by his application. (*Id.* at 31).

---

[3] Unless otherwise specified, facts in this section are taken from the factual findings of the ALJ, which, as further explained below, must be affirmed if they are supported by any substantial evidence.

[4] Most pages in the administrative record (ECF 13) have been marked with multiple different, inconsistent page numbers by the various systems that produced the records in question; citations in this Opinion are not to these internal page numbers, but are rather to the page numbers generated by the Court's electronic case filing ("ECF") system, which can be found at the top of the page when a filing is accessed through ECF or PACER.

The Social Security Administration Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (*Id.* at 5–8); *see* 42 U.S.C. §§ 405(g), 1383(c)(3) (establishing the subject matter jurisdiction of United States District Courts to review final decisions of the Commissioner) *and Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (confirming that the Appeals Council declining to review an ALJ decision establishes that ALJ decision as final). Plaintiff filed the instant action on March 21, 2025. (ECF 1).

### III.    APPLICABLE LAW

A person may qualify for disability insurance benefits under the Act if they are disabled. 42 U.S.C. § 423(a)(1). A person is disabled according to the terms of the Act if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); *accord* 20 C.F.R. § 404.1572(a)–(b).[5]

ALJ's use a standardized framework to determine whether an applicant is disabled under the Act:

> In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity.

---

[5] The Agency has the authority to promulgate regulations implementing the Act under 42 U.S.C. § 405(a). In addition to traditional notice-and-comment regulations issued according to the Administrative Procedure Act, 5 U.S.C. § 553(b)–(c), the Social Security Administration also publishes precedential rulings and statements of policy or interpretation known as Social Security Rulings (each an "SSR"). 20 C.F.R. § 402.160(b)(1) (effective January 17, 2025; previously codified at 20 C.F.R. § 402.35).

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). Before proceeding to steps four and five, the ALJ must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Audler*, 501 F.3d at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2.d 641, 643 (5th Cir. 1984) (per curiam)).

A.    Standard of Review

When reviewing disability determinations made by the Commissioner, a court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). These limitations are imposed by statute:

> The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . and where a claim has been denied by the Commissioner . . ., the Court shall review only the question of conformity with [Agency] regulations and the validity of such regulations.

42 U.S.C. § 405(g). If the ALJ fails to apply the proper legal standard, a denial must be remanded and reconsidered. *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). If the ALJ applies the proper standards, however, and relies on any substantial evidence, the decision must be upheld. *Id*.

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion and constitutes more than a mere scintilla but less than a preponderance of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (cleaned up). "It must do more than create a suspicion of the existence of the fact to be established[.]" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The reviewing court may not reweigh evidence or substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Hardman*, 820 F.3d at 151. Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977).

Even a decision unsupported by substantial evidence will not always be vacated or reversed. An error is harmless and will not result in remand "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).[6] In short, a decision denying Social Security disability benefits is entitled to great deference and will only be overruled if the correct legal standards were not applied, or if the decision turned on a conclusion for which there was no substantial evidence.

B.    The ALJ's Obligation to Develop the Record

Unlike the adversarial proceedings in Article III courts, proceedings before an ALJ are inquisitorial. *Carr v. Saul*, 593 U.S. 83, 89–90 (2021). The role of an ALJ is not to neutrally adjudicate the better of two competing sides, but is rather to "ensure that [the] administrative process is fair to claimants by conducting de novo, informal, non-adversarial hearings[.]" SSR 13-1p, 2013 WL 633939, *2; *accord* 20 C.F.R. § 404.900(b). This sometimes translates to an

---

[6] Failure to apply the correct legal standard can also be a harmless error; *Keel* itself upheld the harmless application of an erroneous step-two "severity" standard. *Keel*, 986 F.3d at 555–56. However, because an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[,]" a failure to apply the correct legal standard can only be sustained as a harmless error if sufficient reasoning is articulated in his decision to support it under the legal standard that he failed to apply. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

obligation to seek out evidence beyond what is submitted by the applicant. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (internal citations and footnotes omitted).

This duty prohibits an ALJ from assessing a claimant's RFC in a way that contradicts all medical opinions in the record. *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (collecting cases). "Medical opinion" has a technical meaning in this context; "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in" performing physical, mental and other demands of work, or in adapting to environmental conditions. 20 C.F.R. § 404.1513(a)(2)(i)–(iii); *accord Ripley*, 67 F.3d at 557 (discussing "a medical source statement describing the types of work that the applicant is still capable of performing").

The law does not require, however, that the record contain any medical opinions in the first place. *Ripley*, 67 F.3d at 557 ("The absence of such a statement, however, does not, in itself, make the record incomplete."); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, *7–*8, 2005 U.S. App. LEXIS 17610, *20–*24 (5th Cir. 2005). If no medical opinion is provided, the inquiry of a reviewing court "focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557. Notably, the substantial evidence needed is not purely medical evidence, but is rather evidence that can compensate for the absence of a medical opinion—i.e., evidence of the work-related functions a claimant can still perform despite their limitations.

Fifth Circuit precedent treats this issue under the inquiry of "whether substantial evidence supports the Commissioner's decision" pursuant to *Taylor*, 706 F.3d at 602. *Ripley*, 67 F.3d at 557

("If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the applicant shows that he is prejudiced.") (footnotes omitted); *accord Raper*, 262 F. Supp. 3d at 422–23. If the ALJ's assessment of a claimant's RFC is not supported by substantial evidence of the limitations that a claimant's impairments impose on the claimant's ability to work, and this lack of substantial evidence results in prejudice or harm[7] to the claimant, the ALJ's decision must be reversed. *Id.*

## IV.    THE ALJ'S FINDINGS

In reaching the conclusion that Plaintiff was not disabled, the ALJ found that Plaintiff's work history made Plaintiff eligible for coverage through September 30, 2022 (Plaintiff's "date last insured"). (ECF 9-1 at 20). At step one of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged disability onset date and the date last insured. (*Id.* at 22). At step two, the ALJ found that Plaintiff had the severe impairments of lumbar spondylosis, cervical spondylosis, and bipolar disorder, and that these impairments were not equivalent to any disabling impairment listed in the applicable regulations. (*Id.* at 22–24).

The ALJ then assessed Plaintiff as having:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds; [can only] occasionally climb ramps or stairs; occasionally balance, as defined in the *Dictionary of Occupational Titles* (DOT); occasionally stoop; occasionally kneel; occasionally crouch; and occasionally crawl. [Plaintiff] can occasionally push and/or pull with the bilateral lower extremities. [Plaintiff] can tolerate no exposure to hazards, such as unprotected heights and moving mechanical parts. [Plaintiff] can understand, remember, and carry out simple instructions, can occasionally

---

[7] Prejudice and harm are closely related concepts; if a plaintiff can show prejudice, *i.e.*, that "additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision[,]" then an error is not harmless, because it will not be "inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Ripley*, 67 F.3d at 557 n.22, *and Keel*, 986 F.3d at 556.

interact with supervisors, co-workers and the public, and can deal with occasional changes in a routine work setting.

(*Id.* at 24). In making this RFC finding, the ALJ found that Plaintiff's statements about his own symptoms could be reasonably caused by his impairments, but that the evidence was only partially consistent with the alleged "intensity, persistence, and limiting effects of these symptoms[.]" (*Id.* at 25). The ALJ noted that "the record contains no opinion evidence to evaluate." (*Id.* at 26). Though Plaintiff had requested a consultative medical examination, the ALJ denied this request on the ground that there was "sufficient evidence in the record." (*Id.* at 19).

At step four in the five-step process, the ALJ relied on 20 C.F.R. § 404.1520(h) to bypass a finding on past relevant work because there was insufficient evidence to support such a finding, and because Plaintiff would be found not disabled under any application of the Medical-Vocational Guidelines.[8] (*Id.* at 27). At step five, the ALJ found that Plaintiff's age, education, work experience, and RFC were such that certain jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Specifically, the vocational expert identified three such jobs: marker, router, and small products assembler. (*Id.* at 28). Accordingly, the ALJ found the Plaintiff not disabled. (*Id.* at 28–29).

## V.    <u>ANALYSIS</u>

Plaintiff contends that the ALJ erred in determining his RFC by relying on her own lay judgment in the absence of any medical opinion evidence. (ECF 10 at 6). As stated above, the ALJ noted that "the record contain[ed] no opinion evidence to evaluate[,]" but declined Plaintiff's "request for a consultative examination," finding "sufficient evidence in the record." (ECF 9-1 at 26, 19). The ALJ then assessed Plaintiff's RFC without the benefit of such an examination. (*Id.*

---

[8] The ALJ supported this decision and the inadequate-evidence finding by citing the fact Plaintiff worked as a personal trainer in 2020, but could not recall the duration of that employment. (ECF 9-1 at 27). Plaintiff has objected to the ALJ's decision not to make a past relevant work finding at this step. (*See* ECF 10 at 6).

at 24). Plaintiff argues that this was a failure to develop the record, violating applicable legal standards. (ECF 10 at 6–10).

The Commissioner responds that the applicable legal standards do not require an ALJ to base an RFC determination on medical opinion evidence. (ECF 16 at 5). The Commissioner further argues that the ALJ was not required to order a consultative examination, and that Plaintiff has failed to show how such further evidence might have changed the result. (ECF 16 at 8–9). The Commissioner's brief emphasizes that the ALJ's inquiry was limited to determining whether Plaintiff was disabled before his date last insured, which was six months prior to when Plaintiff filed his application and was nearly two years before the telephonic hearing before the ALJ. (*Id.* at 8).

The ALJ's discussion of Plaintiff's limitations begins when she is evaluating whether his bipolar disorder amounts to a mental impairment equivalent to a listing. (*See* ECF 9-1 at 23–24). In that analysis, she noted Plaintiff's testimony that:

> he could perform simple maintenance, prepare meals, go to doctor's appointments, take medications, and shop. In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers.

(*Id.* at 23). The ALJ further found that, "the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." (*Id.*). Then, in assessing Plaintiff's ability to "adapt or manage himself[,]" she noted Plaintiff's testimony:

> that he is able to handle self-care and personal hygiene, and the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control.

(*Id.* at 24).

Finally, when discussing Plaintiff's RFC, the ALJ extensively recounted the difficulties that Plaintiff discussed in therapy in November of 2023, and relied on this evidence to justify limitations in the RFC. (*Id.* at 26). The ALJ also considered, but found not probative, therapeutic progress notes from October of 2023. (*Id.* at 26–27). The ALJ noted that, "There are no mental health records during the period at issue between the claimant's alleged onset date and the date last insured." (*Id.* at 26). As such, the assessments discussed were from more than a year after Plaintiff's date last insured. (*Id.*).

As for Plaintiff's physical limitations, the ALJ relied primarily on direct medical evidence. (*See id.* at 25–26). At various places in the decision, she noted testimony about the physical activities Plaintiff could perform; in addition to the sections quoted above, she noted Plaintiff's testimony that, "He has pain every day. He testified to difficulty sitting and that he needs to stand until he needs to move again." (*Id.* at 25). The objective medical evidence for Plaintiff's physical limitations, however, consisted of two x-rays of his spine. Because it is central to the issue raised for judicial review, the ALJ's assessment of this evidence is reproduced in full:

> An x-ray of the claimant's cervical spine in September 2021 showed straightening of the normal cervical lordosis. Vertebral body heights were maintained. There was normal alignment, maintained with flexion and extension, and no prevertebral soft tissue swelling. An x-ray of the lumbar spine showed no significant abnormality with normal lumbar lordosis, normal alignment, and maintained vertebral body heights. Behavior was observed to be normal in December 2021.
>
> An x-ray of the lumbar spine in April 2023 showed mild multilevel degenerative spondylosis consisting of multilevel facet arthrosis and osteophytosis, similar since 2022. There was mild stepwise retrolisthesis T12 on L1-L3 on L4 as well as minimal retrolisthesis L5 on S1, with no significant instability with dynamic maneuvers. X-ray of the cervical spine showed multilevel degenerative spondylosis with multilevel facet arthrosis, uncovertebral hypertrophy, and osteophytosis, most significant at C6-C7 and C7-T1 where there was also mild loss of intervertebral disc height and minimal anterolisthesis C7 on T1. The residual functional capacity (RFC) above accounts for these mostly normal to mild findings, including that the claimant can never climb ladders, ropes, or scaffolds, only occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl, and only occasionally push and/or pull with the bilateral lower extremities. Another x-ray of

the cervical spine in June 2023 showed "nothing changes from that which was obtained 2-1/2 months ago so no new abnormalities are seen. There is degenerative disease but that was seen back in April [2023]." The[ ALJ] notes these records are outside the period at issue, as the claimant's date last insured is September 2022, yet the findings showed no significant worsening from imaging obtained during the period at issue.

(*Id.* at 25–26) (internal citations omitted, first alteration in original).

The Plaintiff argues that this case "is directly analogous to *Ripley*, where there was no medical opinion in the record upon which the ALJ could have based her RFC determination." (ECF 10 at 9). The Court agrees that the ALJ in this case committed the same error as the ALJ in *Ripley*, though Plaintiff misidentifies that error. *See Ripley*, 67 F.3d at 557 ("The absence of [a medical opinion], however, does not, in itself, make the record incomplete."). Rather, as the *Ripley* court stated the issue, "The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back. What the record does not clearly establish is the effect Ripley's condition had on his ability to work." *Id.*

The ALJ in this case committed a *Ripley* error by relying on her own lay understanding of the medical diagnoses and raw medical data to assess an RFC without substantial evidence. However, that error only justifies reversal if it resulted in prejudice to the Plaintiff. *Id.* The Commissioner argues that Plaintiff has not shown prejudice. (ECF 16 at 8–9). The Court agrees.

The Plaintiff has not shown what "additional evidence would have been produced if the ALJ had fully developed the record," nor how that "additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557, n.22. The Plaintiff's brief does not directly address the question of prejudice at all, and after the Commissioner raised it in the response brief, Plaintiff "deem[ed] no reply necessary and relie[d] on the original arguments and authority contained in Plaintiff's primary brief." (ECF 17 at 1).

In addition to Plaintiff's silence as to prejudice, the Court notes two further points. The first is that Plaintiff's date last insured was more than a year prior to the resolution of his request for a consultative examination. As such, to produce evidence that might have led to a different result, such an examination would have needed to address Plaintiff's disability, not at the time of the examination, but at a time already long past. Though this is not wholly dispositive on the issue of prejudice, the Court agrees with the Commissioner that it is a persuasive reason to think the ALJ's *Ripley* error was not prejudicial. (*See* ECF 16 at 8) (citing *Henderson v. Colvin*, 2017 WL 471573, *4 (S.D. Miss. Feb. 3, 2017).

The second is a case cited by Plaintiff that could easily be mistaken as conflicting with the Court's holdings in this case. In *Alondra E.F. v. Kijakazi*, as Plaintiff correctly notes, an unfavorable decision by the Commissioner was remanded as unsupported by substantial evidence. 2022 WL 605301, *3–5 (N.D. Tex. Mar. 1, 2022) (Horan, J.). In *Alondra*, unlike in this case, the record contained medical opinions from state agency medical consultants who had reviewed the claimant's file during the initial and upon-reconsideration stages of the claimant's application. *Id.* at *3. They were the only medical opinions in the record. *Id.* As Plaintiff summarizes, "the ALJ rejected [those opinions] in part to assess *greater* limitations than those opined to by the state agency medical consultants, but in doing so 'relied on his own lay interpretation of Plaintiff's ability to work.'" (ECF 10 at 9–10) (emphasis in original) (quoting *Alondra*, 2022 WL 605301 at *5).

When presented in that way, *Alondra* may seem to support remanding any case where the RFC is assessed without the support of medical opinion evidence, but in fact the issue of prejudice was central to that decision. Because "evidence adduced at the hearing suggested [the claimant's] mental limitations were *greater* than those noted" in the medical opinions of record, an updated

medical opinion "that would have accounted for" those changes might have supported greater limitations than the ones the ALJ found. *Alondra*, 2022 WL 605301 at *5 (emphasis in original).

In this case, by contrast, nothing in the record or in the arguments advanced by the parties indicates that a consultative examination might have produced evidence supporting greater limitations than those assessed in Plaintiff's RFC. Consequently, though the ALJ committed a *Ripley* error in this case, it has not been shown prejudicial; thus, it does not require reversal.

## VI.    <u>CONCLUSION</u>

In summary, the decision of the ALJ was partially unsupported by substantial evidence, but, the Plaintiff has not shown that he was prejudiced by the error. Accordingly, the decision of the Commissioner is AFFIRMED, and judgment will be entered accordingly.

IT IS SO ORDERED.

ENTERED January 6, 2026.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE